UN **Sealed** 6|9|05

Public and unofficial staff access
to this instrument are
prohibited by court order.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 6 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Criminal No. B-05- 4 1 5 8 |
| | § | |
| CONRADO CANTU, | § | **UNDER SEAL** |
| GERONIMO GARCIA, aka JERRY GARCIA, | § | |
| RUMALDO RODRIGUEZ, | § | |
| HECTOR SOLIS, | § | |
| REYNALDO URIBE, aka REY URIBE | § | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### INTRODUCTION

At all times material to this Indictment:

1.    The Cameron County Sheriff's Department was a law enforcement

agency in Cameron County, Texas, empowered to enforce the laws of the State of

Texas and County of Cameron.

2.    **CONRADO CANTU ("CANTU"),** defendant herein, was the duly

elected Sheriff of Cameron County, Texas, from January 1, 2001, until December 31,

2004, and, as such, was responsible for overseeing the investigation of crimes,

enforcing laws, collecting and preserving evidence, inventorying any property that was

seized, recovered, found, or otherwise taken into custody, interviewing witnesses,

making lawful arrests, patrolling neighborhoods and making various truthful and accurate reports of his official activities. **CANTU** was certified by the Texas Commission on Law Enforcement Standards as a peace officer and, as such, was sworn to uphold the Constitution and laws of Texas and the United States. Prior to serving as the Cameron County Sheriff, **CANTU** was an elected constable in Cameron County from at least January 1, 1998, until on or about December 31, 2000.

3.    **RUMALDO RODRIGUEZ ("RODRIGUEZ")**, defendant herein, was a law enforcement officer employed by the Cameron County Sheriff's Department and, as such, was responsible for investigating crimes, enforcing laws, collecting and preserving evidence, inventorying any property that was seized, recovered, found, or otherwise taken into custody, interviewing witnesses, making lawful arrests, patrolling neighborhoods and making various truthful and accurate reports of his official activities. **RODRIGUEZ** was certified by the Texas Commission on Law Enforcement Standards as a peace officer and, as such, was sworn to uphold the Constitution and laws of Texas and the United States.

4.    **GERONIMO GARCIA, aka JERRY GARCIA ("GARCIA")**, defendant herein, was a resident of Cameron County, Texas, and engaged in criminal conduct, including illegal narcotics trafficking and transportation of proceeds from the sale of illegal narcotics.

2

5.     **HECTOR SOLIS ("SOLIS")**, defendant herein, was a resident of Cameron County, Texas, and engaged in criminal conduct, including illegal gambling activities.

6.     **REYNALDO URIBE, aka REY URIBE ("URIBE")**, defendant herein, was a resident of Cameron County, Texas, and engaged in criminal conduct, including the transportation of proceeds from the sale of illegal narcotics.

**COUNT ONE**
**18 U.S.C. § 1962(c)**

The Enterprise

At various times relevant to this indictment:

**CONRADO CANTU,**
**RUMALDO RODRIGUEZ,**
**GERONIMO GARCIA, aka JERRY GARCIA**, and

along with the Cameron County Sheriff's Department, and others known and unknown to the Grand Jury, were members and associates of an enterprise which operated principally in Cameron County, Texas, namely, a criminal organization whose members engaged in acts of extortion, drug trafficking, obstruction of state and local law enforcement [gambling], witness tampering, and bribery.

The enterprise, including its leadership, membership and associates, constituted an enterprise as that term is defined by Title 18, United States Code, Section 1961(4),

that is, a group of individuals and an entity associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate commerce.

## Purposes of the Enterprise

The purposes of the enterprise included, but were not limited to, the following:

1. The use of the Cameron County Sheriff's Department and the position of Sheriff of Cameron County, Texas, to protect and assist persons involved in illegal activity.

2. The use of the Cameron County Sheriff's Department and the position of Sheriff of Cameron County, Texas, to illegally generate income for members and associates of the enterprise.

3. The use of the Cameron County Sheriff's Department and the position of Sheriff of Cameron County, Texas, to deprive the citizens of Cameron County, Texas, of their right to honest services of public officials.

4. The protection of members of the enterprise and the illegal proceeds generated therefrom.

## Means and Methods of the Enterprise

Among the means and methods by which the members of the enterprise and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

5.      Members of the enterprise and their associates solicited and accepted bribes and extorted money and other property from persons known to them to be involved in criminal activities, including drug dealing and the transportation of drug proceeds.

6.      Members of the enterprise acquired and transmitted to persons they believed to be involved in criminal activities information the members of the enterprise believed would be of use and assistance to persons involved in criminal activities, in order to assist such persons in their criminal endeavors.

7.      Members of the enterprise and their associates used communication facilities, including cellular telephone companies with interstate operations, to advance the affairs of the enterprise.

8.      Members of the enterprise used property belonging to the Cameron County Sheriff's Department to further the illicit affairs of the enterprise.

9.     Members of the enterprise used the legitimate, law enforcement authority, symbols and tools of such authority to further the illicit affairs of the enterprise.

10.     Members of the enterprise and their associates arranged to acquire, count, and distribute the illegal income generated by the enterprise.

11.     Members of the enterprise and their associates arranged to hide, convert, and protect the illicit profits and proceeds from the enterprise.

12.     Members of the enterprise and their associates used interstate highways and equipment made or purchased in interstate commerce to further the affairs of the enterprise.

13.     Members of the enterprise and their associates acquired proceeds of illicit activity conducted in interstate and foreign commerce in furtherance of the affairs of the enterprise.

14.     Members of the enterprise and their associates expanded the affairs of the enterprise over time to include new sources of illicit income from bribes, kickbacks, and extortions.

## Roles of the Defendants

The defendants participated in the operation and management of the enterprise.

a. The defendant **CANTU** was a leader of the enterprise who directed other members of the enterprise in carrying out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

b. Under the direction of the leader of the enterprise, the defendants **RODRIGUEZ** and **GARCIA** participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

## The Racketeering Violation

From an unknown date, believed to be in approximately January 2001, and continuously thereafter up to and including December 2004, both dates being inclusive, in the Southern District of Texas and elsewhere within the jurisdiction of this Court,

**CONRADO CANTU,**
**GERONIMO GARCIA, aka JERRY GARCIA, and**
**RUMALDO RODRIGUEZ,**

defendants herein, together with others known and unknown to the Grand Jury, being persons employed by and associated with said enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, did unlawfully and knowingly conduct and participate, directly and indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, that is, through the

commission of the following Racketeering Acts.

The Pattern of Racketeering Activity

The pattern of racketeering activity, as defined by Title 18, United States Code, Sections 1961(1) and 1961(5), committed the following acts:

Racketeering Act No. 1:

The defendants named below committed the following acts, any one of which alone constitutes Racketeering Act 1:

A.     The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about July 15, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU**
and
**GERONIMO GARCIA,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly attempt to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU** and **GARCIA** obtained property that was not due them or **CANTU**'s office, and to which they nor **CANTU**'s office was entitled under color of official right, in that **CANTU** and **GARCIA** did obtain five thousand dollars ($5,000) in United States currency from

a person whom **CANTU** and **GARCIA** believed to be engaged in criminal conduct, including illegal narcotics trafficking, in exchange for the performance and nonperformance of official acts by **CANTU**, namely, providing to such person information regarding an ongoing criminal investigation and for **CANTU**'s agreement to use the powers of his office to protect and assist such person in his criminal conduct.

In violation of Title 18, United States Code, Sections 1951 and 2.

B.     The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about July 15, 2004, in Cameron County, Texas,

**CONRADO CANTU**
and
**GERONIMO GARCIA,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did intentionally and knowingly solicit and accept, and agree to accept from another, namely a person whom **CANTU** and **GARCIA** believed to be engaged in criminal conduct, a benefit, namely five thousand dollars ($5,000) in United States currency, as consideration for the exercise of discretion by **CANTU** as the Sheriff of Cameron County, Texas, namely, the disclosure of information regarding an ongoing criminal investigation and **CANTU**'s agreement to use the powers of his office to protect and assist the person **CANTU** and **GARCIA** believed to be engaged

in criminal conduct.

In violation of Texas Penal Code, Section 36.02(a)(1) [bribery].

Racketeering Act No. 2:

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about October 12, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU,**
**RUMALDO RODRIGUEZ,**
and
**GERONIMO GARCIA,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly attempt to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU**, **RODRIGUEZ,** and **GARCIA** obtained property that was not due them or the offices of **CANTU** and **RODRIGUEZ,** and to which neither they nor the offices of **CANTU** and **RODRIGUEZ** were entitled under color of official right, in that **CANTU**, **RODRIGUEZ,** and **GARCIA** did obtain or caused to be obtained thirteen thousand dollars ($13,000) in United States currency, which they believed to be proceeds from the sale of controlled substances, from persons the defendants believed to be engaged in criminal conduct, including illegal narcotics trafficking, in exchange for the

nonperformance of official acts by **CANTU** and **RODRIGUEZ**, namely, not arresting such persons.

In violation of Title 18, United States Code, Sections 1951 and 2.

Racketeering Act No. 3:

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about October 14, 2004, and continuing through on or about December 31, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU**
and
**GERONIMO GARCIA,**

defendants herein, did knowingly combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU** and **GARCIA** agreed to obtain property that was not due them or the office of **CANTU**, and to which neither they nor the office of **CANTU** was entitled under color of official right, in that **CANTU** and **GARCIA** agreed to obtain ten percent of purported drug proceeds from a person the defendants believed would be transporting the drug proceeds through Cameron County, Texas, in exchange for the

nonperformance of official acts by **CANTU**, namely, for **CANTU**'s agreement to use the powers of his office to protect and assist such person in the illegal transportation of such drug proceeds.

## Overt Acts

The Grand Jury adopts, alleges and incorporates herein paragraph 32 of the Overt Acts listed in Count 2 of this Indictment.

In violation of Title 18, United States Code, Section 1951.

Racketeering Act No. 4:

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about October 13, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court:

## CONRADO CANTU,

defendant herein, as Sheriff of Cameron County, Texas, did knowingly combine, conspire, confederate and agree with persons known and unknown to the Grand Jury to obstruct the enforcement of the criminal laws of the State of Texas with the intent to facilitate an illegal gambling business, namely, eight-liner slot machines, said illegal business having the following attributes:

i.     Said business violated the criminal provisions of Texas Penal Code,

Sections 47.02 (gambling), 47.03 (gambling promotion), 47.04 (keeping a gambling establishment), and 47.06 (possession of a gambling device, equipment, or paraphernalia);

ii. Said business involved five or more persons who conduct, finance, manage, supervise, direct, or own all or part of said business; and

iii. Said business was in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 on any single day.

## Overt Acts

Pursuant to and to effectuate the objects of said conspiracy, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1. On or about October 13, 2004, a co-conspirator telephoned **CANTU** and requested information on whether there would be a task force raid at a slot machine parlor in Cameron County, Texas.

2. On or about October 14, 2004, **CANTU** informed the co-conspirator, via telephone, that no raid would occur.

3. On or about October 14, 2004, **CANTU** instructed a deputy sheriff of the Cameron County Sheriff's Department not to conduct a slot machine parlor raid.

In violation of Title 18, United States Code, Section 1511.

Racketeering Act No. 5:

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment.

On or about March 1, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU**
and
**RUMALDO RODRIGUEZ,**

defendants herein, did knowingly combine, conspire, confederate and agree with each other, and with other persons known and unknown to the Grand Jury, to intentionally harass other persons, namely deputies of the Cameron County Sheriff's Department, and thereby hinder, delay, prevent, and dissuade such persons from causing a criminal prosecution to be sought and instituted and from assisting in such prosecution.

Overt Acts

The Grand Jury adopts, alleges and incorporates herein paragraphs 1 through 6 of the Introduction of this Indictment and paragraphs 11 through 15 of the Overt Acts listed in Count 2 of this Indictment.

In violation of Title 18, United States Code, Section 1512(k).

Racketeering Act No. 6:

The defendants named below committed the following acts, any one of which alone constitutes Racketeering Act 6:

A.    The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of this Indictment.

On or about January 1, 2001, and continuing through December 31, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU**
and
**GERONIMO GARCIA,**

defendants herein, did unlawfully and knowingly conspire, combine, confederate and agree with each other and other persons known and unknown to the Grand Jury, to possess with intent to distribute controlled substances which involved a quantity exceeding five kilograms of cocaine, a Schedule II controlled substance, and a quantity exceeding one hundred kilograms of marihuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 846 and 841(a)(1).

B.    The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of this Indictment.

From on or about January 1, 2000, and continuing until on or about September 2002, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

## CONRADO CANTU
and
## GERONIMO GARCIA,

defendants herein, did knowingly combine, conspire, confederate and agree with each other, and with other persons known and unknown to the Grand Jury, to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU** and **GARCIA** agreed to obtain property that was not due to them or the office of **CANTU**, and to which neither they nor the office of **CANTU** was entitled under color of official right, in that **CANTU** and **GARCIA** agreed to obtain money from persons whom the defendants knew to be engaged in criminal conduct, including illegal narcotics trafficking, in exchange for the performance and nonperformance of official acts by **CANTU**, namely for **CANTU**'s agreement to use the powers of his office to protect and assist such persons in their criminal conduct, in violation of Title 18, United States Code, Section 1951.

Overt Acts

The Grand Jury adopts, alleges and incorporates herein paragraphs 1 through 10 of the Overt Acts listed in Count 2 of this Indictment.

In violation of Title 18, United States Code, Section 1951.

**All in violation of Title 18, United States Code, Section 1962(c).**

## COUNT TWO
## 18 U.S.C. § 1962(d)

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of this Indictment and paragraphs 1 through 14 of Count 1.

From in or about and between January 1, 2001, through December 31, 2004, both dates being approximate and inclusive, within the Southern District of Texas and elsewhere, the defendants

**CONRADO CANTU,**
**GERONIMO GARCIA, aka JERRY GARCIA, and**
**RUMALDO RODRIGUEZ,**

together with other persons known and unknown to the Grand Jury, being persons employed by and associated with the above described enterprise, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and intentionally conspired to violate Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct

of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of multiple acts indictable under the following provisions of federal law:

A.     Title 18, United States Code, Section 1951 (extortion);

B.     Title 18, United States Code, Section 1511 (obstruction of state and local law enforcement); and

C.     Title 18, United States Code, Section 1512 (conspiracy to tamper with a witness, victim, or an informant);

multiple acts involving a state offense chargeable under the following provision of state law:

Texas Penal Code, Section 36.02(a)(1) (bribery); and

multiple acts involving the distribution of narcotic drug controlled substances including cocaine and marihuana in violation of the laws of Title 21, United States Code, Sections 841 and 846.

It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

Pursuant to the conspiracy, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1.    Following his assumption of the elected office of Sheriff of Cameron County, Texas, on January 1, 2001, and during the course of this conspiracy, **CANTU** began soliciting and accepting payments from persons he believed to be drug dealers and money launderers, in exchange for protection of their illegal operations. These payments, in total, were in the tens of thousands of dollars, and continued up through the year 2004.

2.    During or about February 2001, **CANTU** met with Rolando Curiel ("Curiel"), a person whom **GARCIA** and **CANTU** knew was engaging in criminal conduct, including narcotics trafficking, and requested and obtained approximately ten thousand dollars ($10,000) from Curiel.

3.    During or about September 2001, **CANTU** met with Curiel and requested and obtained approximately three thousand dollars ($3,000) from Curiel.

4.    During or about October 2001, **GARCIA** arranged a meeting between **CANTU** and Curiel.

5.    During or about October 2001, **CANTU** met with Curiel and obtained approximately ten thousand dollars ($10,000) from Curiel.

6.     During or about October 2001, **CANTU** requested and obtained approximately one thousand five hundred dollars ($1,500) from Jorge Mercado ("Mercado"), a person whom **GARCIA** and **CANTU** knew was engaging in criminal conduct, including narcotics trafficking

7.     During or about October 2001, **CONRADO CANTU** met with Mercado and obtained approximately three thousand dollars ($3,000).

8.     During or about October 2001, **CANTU** asked Mercado to contact five to ten other persons engaged in narcotics trafficking and request that they each pay **CANTU** five thousand dollars ($5,000).

9.     During or about October 2001, **GARCIA** asked Curiel if Curiel knew of any locations where his narcotics trafficking competitors stored illegal narcotics and proceeds from the sale of such narcotics. **GARCIA** informed Curiel that **CANTU** and **GARCIA** would obtain the illegal narcotics and proceeds therein for their personal gain.

10.     During or about October 2002, **CANTU** met with Juan Carlos Sanchez Vasquez ("Kalin") and Andres Garza, persons whom **CANTU** knew were engaging in criminal conduct, including narcotics trafficking, and requested and obtained approximately three thousand dollars ($3,000) from Kalin.

## Release of Prisoner - March 1, 2004

11.    On or about March 1, 2004, deputies of the Cameron County Sheriff's Department, including members of the SWAT team, staged near the scene of a domestic disturbance. The staging was initiated by an emergency 911 call received by the Cameron County Sheriff's Department concerning a kidnapping in Olmito, Texas. While the deputies were meeting to plan their actions, the kidnapping suspect spotted them, fled the scene in his vehicle, and nearly hit one of the deputies with his vehicle as the subject fled back to his residence. After the deputies pursued the subject into the residence, the subject grabbed a loaded shotgun and aimed it at the deputies. One deputy fired several shots in response to the imminent threat and the subject was subdued and placed in handcuffs after a struggle with the deputies.

12.    Following these events, **RODRIGUEZ** arrived at the scene, in possession of a cellular telephone, and spoke to an officer with the Cameron County Sheriff's Department. **RODRIGUEZ** informed the officer that his comments were "off the record" and that the Sheriff's Department needed to create the appearance that the kidnapping and subsequent assault of law enforcement officers had not occurred. **RODRIGUEZ** further informed the officer that the Sheriff's Department should keep the media from discovering the incident. **RODRIGUEZ** ordered another law enforcement witness to end his interview with an investigator and leave the scene

immediately. To another law enforcement witness, **RODRIGUEZ** stated that the subject was supposed to be en route to speak to the Sheriff about the incident.

13. **RODRIGUEZ** then interviewed the subject and confirmed that the subject had aimed a loaded shotgun at officers of the Cameron County Sheriff's Department, that shots were fired by one of the deputies in response to the imminent threat, and that the subject knew that he was being pursued by police when he fled in his vehicle. After interviewing the subject, **RODRIGUEZ** stated to a law enforcement witness that the Sheriff's Department needed to make the incident disappear.

14. **RODRIGUEZ** then caused the subject to be unhandcuffed and transported the subject in **RODRIGUEZ**'s vehicle away from the scene directly to a personal meeting with **CANTU** at **CANTU**'s home. Thereafter, **RODRIGUEZ** released the subject, who was a close friend and political ally of **CANTU.**

15. During the above events, a telephone registered to a member of the subject's family was in contact with **CANTU**'s personal cellular telephone. Another of **CANTU**'s telephones was in contact with the cellular telephone of **RODRIGUEZ.** While at the scene, **RODRIGUEZ** stated to one of the law enforcement officers that he was being placed in a difficult position.

16. On May 14, 2004, the Cameron County Sheriff's Department seized $25,000 in purported drug proceeds from a truck. The driver of the truck was a

government confidential source ("CS-1"). On the same day as this seizure, CS-1 contacted **GARCIA** and asked for his assistance in discovering the law enforcement source of the information that led to the seizure of the money. **GARCIA** agreed to provide such assistance. On May 19, 2004, **GARCIA** provided CS-1 with the name of the law enforcement agent and agency that was investigating CS-1.

17. On May 28, 2004, **GARCIA** advised CS-1 in coded language that **CANTU** wanted $4,000 in exchange for providing protection to CS-1's illegal operation to transport drug money.

18. On May 30, 2004, **RODRIGUEZ** called the law enforcement agent who provided the information leading up to the May 14, 2004 seizure of $25,000 from CS-1 and asked him for the identity of the agency providing the information that led to the seizure.

19. On June 3, 2004, **GARCIA** informed CS-1 that law enforcement corruption existed in Brownsville, Texas ("Brownsville"), similar to the corruption that existed in the town of Matamoros in the United Mexican States (Mexico) and that CS-1 should expect **CANTU** to help CS-1.

20. During that same month **GARCIA** informed a convicted drug dealer that **CANTU** would charge the drug dealer at least $50,000 to allow him to escape if the drug dealer were to be transferred into **CANTU**'s jurisdiction.

23

21.     On June 21, 2004, **GARCIA** accepted a $2,000 payment from CS-1 in exchange for providing transportation of approximately $40,000 in purported drug proceeds from Robstown, Texas to Brownsville.

22.     On July 15, 2004, **GARCIA** arranged for a meeting between CS-1, who purportedly was a transporter of drug proceeds, and **CANTU**.   At that meeting, **CANTU** instructed CS-1 to deal directly with **GARCIA**.   Pursuant to these instructions, CS-1 gave **GARCIA** $5,000 in U.S. currency for **CANTU**'s assistance in CS-1's purported illegal operations.   **GARCIA** then informed CS-1 that **CANTU** would receive a portion of the $5,000.   Later that day, **GARCIA** met with **CANTU**.

23.     On July 22, 2004, **CANTU** informed an officer whom **CANTU** believed was investigating CS-1 that CS-1 was not involved in drug-related activities, when, in fact, **CANTU** believed CS-1 was involved in the movement of drug proceeds.

24. During October 2004, **GARCIA** was advised by CS-1, a person believed by **GARCIA** and **CANTU** to be a transporter of drug proceeds, that CS-1 was planning to move a large amount of drug proceeds from San Antonio, Texas, to Brownsville. **GARCIA** in turn advised **CANTU** of this movement of purported drug proceeds.

25.     On October 12, 2004, **CANTU** contacted **RODRIGUEZ** and pointed out to him the make, model and color of the vehicle that would be transporting the

purported drug proceeds (the "load car"). At about 2:09 p.m. on October 12, 2004, **CANTU** instructed **RODRIGUEZ** to be out on the highway by 4:00 p.m.- 4:30 p.m. that day so that **RODRIGUEZ** could conduct a highway stop on the load car. **CANTU** also cautioned **RODRIGUEZ** that they should not speak to each other anymore by telephone so that it would not appear that they communicated frequently during the traffic stop.

26.     On October 12, 2004, at approximately 6:30 p.m., **RODRIGUEZ**, armed, in uniform and using an unmarked Cameron County Sheriff's Department vehicle with police lights, conducted a traffic stop of the load car. **RODRIGUEZ** searched the load car and seized thirteen thousand dollars ($13,000) in purported drug proceeds.

27.     Thereafter, neither **RODRIGUEZ,** who first seized the thirteen thousand dollars ($13,000), nor **CANTU,** who engineered the highway stop and the taking of the purported drug proceeds, provided a receipt recognizing the official seizure of the money. They also did not document the taking of the money in police reports, nor surrender the money to the county treasurer, nor advise the District Attorney's Office of the seizure.

28.     On October 12, 2004, at approximately 7:50 p.m., **RODRIGUEZ** and **CANTU** used coded language to telephonically discuss the seizure of $13,000 in purported drug proceeds.

29.     On October 12, 2004, at approximately 8:30 p.m., **GARCIA** met with CS-1, the person in charge of transporting the purported $13,000 in drug proceeds. During this meeting, **GARCIA** told CS-1 that **CANTU** and **RODRIGUEZ** were going to keep the money and that CS-1 might receive half of the money. CS-1 told **GARCIA** that the load car was rented by CS-1's sister and that they needed the car back.

30.     On October 12, 2004, at approximately 9:22 p.m., **CANTU** and **RODRIGUEZ** discussed by telephone circumstances related to the return of the rented load car. **CANTU** issued instructions to **GARCIA** concerning the return of the load car to CS-1, and organized the delivery of the car later that evening to a restaurant in Brownsville where CS-1 worked.

31.     On October 12, 2004, at approximately 10:48 p.m., **CANTU** informed **RODRIGUEZ** that the load car had been returned to CS-1. Using coded language, they discussed the discovery of the purported drug proceeds by **RODRIGUEZ**. In response to **CANTU**'s question of whether the money was under the seat, **RODRIGUEZ** responded that it was.   During this same call, **CANTU** and **RODRIGUEZ** also discussed the possibility that more drug proceeds had been in the load car.

32.     Beginning at approximately 3:20 p.m. on October 14, 2004, **CANTU** and

**GARCIA** met with CS-1. In response to CS-1's requests for the return of the $13,000 or an official receipt showing its seizure, **CANTU** told CS-1 that he should leave the issue alone or CS-1's sister, under whose name the load car was rented, would be arrested by the police. **CANTU** also provided instruction and advice to CS-1 about how to transport drug proceeds to decrease the risks that such proceeds would be seized by law enforcement officers. Specifically, **CANTU** advised CS-1 that CS-1 should not use rental cars, as the Cameron County Sheriff's Department's highway interdiction team looked for rental cars. **CANTU** advised that, for the next drug money load, **CANTU** would provide an escort from the Cameron County Sheriff's Department to drive next to the load vehicle and provide cover in the event that another police agency stopped the load vehicle. **CANTU** further indicated that **CANTU** would not provide a receipt for the $13,000. **CANTU** told CS-1 that they should make a deal wherein **CANTU** would protect the next movement of drug proceeds in return for ten percent of the money being transported. **CANTU** provided his personal pager number to CS-1, but cautioned CS-1 that he should communicate with **CANTU** through **GARCIA** so that there would be no calls between **CANTU** and CS-1. **CANTU** further cautioned that such protected money runs had to be completed prior to January 2005, which was when **CANTU**'s term as Sheriff ended.

33.    After **CANTU** left this meeting, **GARCIA** remained behind with CS-1

and told CS-1 that **CANTU** did not want to give CS-1 a receipt for the seized $13,000 for fear that CS-1 would file a claim for the money. **CANTU** then called **GARCIA** and told him to leave the meeting and not to talk anymore because **CANTU** had just seen what he believed to be a "narc".

34. On October 13, 2004, **CANTU** spoke by telephone with a person representing illegal gambling interests in Cameron County, Texas. The caller wanted to know if the task force would be conducting raids on illegal slot machine businesses. On October 14, 2004, the same person called **CANTU** and asked **CANTU** about task force raids that day. Using coded language, the caller inquired as to whether a raid was planned for that day because, if there were such a plan, the gambling establishment would close the business so it would not get caught conducting gambling activities. **CANTU** requested the name of the business and was told by the caller that there were three or four businesses, with one of them named "Mesquite". Later that day, **CANTU** informed the person that there were no raids planned for that day. **CANTU** spoke with a deputy later that day and confirmed that the Sheriff's Department was not planning any such raids for October 14, 2004. **CANTU** further instructed the deputy not to conduct any gambling raids that day.

35. On October 27, 2004, at approximately 4:45 p.m., **CANTU** spoke by telephone to the person who had called him about the gambling raids and told that

person that their telephones were being recorded and that the person should change his number immediately. The person agreed. **CANTU** subsequently changed his cellular telephone number.

**All in violation of Title 18, United States Code, Section 1962(d).**

## COUNT THREE
## Interference With Commerce Under Color of Official Right
## 18 U.S.C. §§ 1951 and 2

1.     The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

2.     On or about July 15, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU**
and
**GERONIMO GARCIA,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly attempt to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU** and **GARCIA** obtained property that was not due them or **CANTU**'s office, and to which they nor **CANTU**'s office was entitled under color of official right, in that **CANTU** and **GARCIA** did obtain five thousand dollars ($5,000) in United States currency from

a person whom **CANTU** and **GARCIA** believed to be engaged in criminal conduct, including illegal narcotics trafficking, in exchange for the performance and nonperformance of official acts by **CANTU**, namely, providing to such person information regarding an ongoing criminal investigation and for **CANTU**'s agreement to use the powers of his office to protect and assist such person in his criminal conduct.

**All in violation of Title 18, United States Code, Sections 1951 and 2.**

## COUNT FOUR
## Interference With Commerce Under Color of Official Right
## 18 U.S.C. §§ 1951 and 2

1.    The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

2.    On or about October 12, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU,**
**RUMALDO RODRIGUEZ,**
and
**GERONIMO GARCIA,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly attempt to obstruct, delay and affect interstate and foreign commerce by means of extortion, namely that **CANTU**, **RODRIGUEZ**, and **GARCIA** obtained property that was not due them or the offices

of **CANTU** and **RODRIGUEZ,** and to which neither they nor the offices of **CANTU** and **RODRIGUEZ** were entitled under color of official right, in that **CANTU,** **RODRIGUEZ,** and **GARCIA** did obtain or caused to be obtained thirteen thousand dollars ($13,000) in United States currency, which they believed to be proceeds from the sale of controlled substances, from persons the defendants believed to be engaged in criminal conduct, including illegal narcotics trafficking, in exchange for the nonperformance of official acts by **CANTU** and **RODRIGUEZ,** namely, not arresting such persons.

      **All in violation of Title 18, United States Code, Sections 1951 and 2.**

## COUNT FIVE
## Conspiracy To Launder Money - 18 U.S.C. § 1956(h)

### A. Introduction

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

### B. The Conspiracy

From on or about January 1, 2000, and continuing through on or about December 31, 2003, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

### GERONIMO GARCIA,

defendant herein, did knowingly and intentionally combine, conspire, confederate and agree with other persons known and unknown to the Grand Jury to knowingly conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of some form of unlawful activity, that is, the distribution of controlled substances, (1) with the intent to promote the carrying on of a specified unlawful activity, namely, the distribution of controlled substances, and (2) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the said specified unlawful activity.

**All in violation of Title 18, United States Code, Section 1956(h).**

# COUNT SIX
## Conspiracy To Launder Money - 18 U.S.C. § 1956(h)

### A. Introduction

The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

### B. The Conspiracy

From on or about June 21, 2004, and continuing through on or about December 31, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**CONRADO CANTU,**
**GERONIMO GARCIA,**
and
**REYNALDO URIBE,**

defendants herein, did knowingly and intentionally combine, conspire, confederate and agree with each other, and with other persons known and unknown to the Grand Jury, to knowingly conduct financial transactions affecting interstate and foreign commerce, which transactions involved property represented to be the proceeds of some form of unlawful activity, that is, the distribution of controlled substances, with the intent to promote the carrying on of a specified unlawful activity, namely, the distribution of controlled substances.

**All in violation of Title 18, United States Code, Section 1956(h).**

## COUNT SEVEN
## Money Laundering - 18 U.S.C. §§ 1956(a)(3)(A), 1956(a)(3)(B) and 2

1.     The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

2.     On or about June 21, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**GERONIMO GARCIA**
and
**REYNALDO URIBE,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly cause to be conducted and attempt to cause to be conducted a financial transaction affecting interstate and foreign commerce, which transaction involved property represented to be the proceeds of some form of unlawful activity, that is, the distribution of controlled substances, (1) with the intent to promote the carrying on of said specified unlawful activity, namely the distribution of controlled substances, and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the property believed to be the proceeds of the said specified unlawful activity.

**All in violation of Title 18, United States Code, Sections 1956(a)(3)(A), 1956(a)(3)(B) and 2.**

## COUNT EIGHT
## Money Laundering - 18 U.S.C. §§ 1956(a)(3)(A), 1956(a)(3)(B) and 2

1.     The Grand Jury adopts, realleges and incorporates herein paragraphs 1 through 6 of the Introduction Section of this Indictment.

2.     On or about October 12, 2004, in the Southern District of Texas and elsewhere within the jurisdiction of the Court,

**GERONIMO GARCIA**
and
**REYNALDO URIBE,**

defendants herein, each aided and abetted by the other and by others known and unknown to the Grand Jury, did knowingly cause to be conducted and attempt to cause to be conducted a financial transaction affecting interstate and foreign commerce, which transaction involved property, approximately thirteen thousand dollars ($13,000), represented to be the proceeds of some form of unlawful activity, that is, the distribution of controlled substances, (1) with the intent to promote the carrying on of said specified unlawful activity, namely the distribution of controlled substances, and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the property believed to be the proceeds of the said specified unlawful activity.

**All in violation of Title 18, United States Code, Sections 1956(a)(3)(A), 1956(a)(3)(B) and 2.**

## COUNT NINE
## Obstruction of State or Local Law Enforcement - 18 U.S.C. § 1511

1.      The Grand Jury adopts, realleges and incorporates herein paragraphs 1

through 6 of the Introduction Section of this Indictment.

2.      On or about October 14, 2004, in the Southern District of Texas and

elsewhere within the jurisdiction of the Court,

### CONRADO CANTU
and
### HECTOR SOLIS,

defendants herein and, in the case of **CANTU**, as Sheriff of Cameron County, Texas,

did knowingly combine, conspire, confederate and agree with each other and persons

known and unknown to the Grand Jury to obstruct the enforcement of the criminal

laws of the State of Texas with the intent to facilitate an illegal gambling business, to

wit: eight-liner slot machines, said illegal business having the following attributes:

    i.      said business violated the criminal provisions of Texas Penal

            Code, Sections 47.02 (gambling), 47.03 (gambling promotion),

            47.04 (keeping a gambling establishment), and 47.06 (possession

            of a gambling device, equipment, or paraphernalia);

    ii.     said business involved five or more persons who conducted,

            financed, managed, supervised, directed, or owned all or part of

said business; and

iii.    said business was in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 on any single day.

Overt Acts

Pursuant to and to effectuate the objects of said conspiracy, the following and other overt acts were committed in the Southern District of Texas and elsewhere:

1.    On or about October 13, 2004, **SOLIS** telephoned **CANTU** and requested information on whether there would be a task force raid at a slot machine parlor in Cameron County, Texas.

2.    On or about October 14, 2004, **CANTU** informed **SOLIS,** via telephone, that no raid would occur.

3.    On or about October 14, 2004, **CANTU** instructed a deputy of the Cameron County Sheriff's Department not to conduct a slot machine parlor raid.

**All in violation of Title 18, United States Code, Section 1511.**

## COUNT TEN
## Conspiracy - 21 U.S.C. §§ 846, 841(a)(1)

From during or about June 1998, and continuing until on or about December 31,

2004, in the Southern District of Texas and elsewhere within the jurisdiction of the

Court,

## CONRADO CANTU
and
## GERONIMO GARCIA,

defendants herein, did unlawfully and knowingly conspire, combine, confederate and

agree with each other, and with other persons known and unknown to the Grand Jury,

to possess with intent to distribute controlled substances which involved a quantity

exceeding 5 kilograms of cocaine, a Schedule II controlled substance, and a quantity

exceeding 100 kilograms of marihuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Sections 846 and 841(a)(1).**

## NOTICE OF CRIMINAL FORFEITURE
## (Title 18, United States Code, Section 1963)

1.     The allegations contained in Counts 1 and 2 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Counts 1 and 2 of this Indictment.

2.     The defendants,

## CONRADO CANTU, GERONIMO GARCIA and RUMALDO RODRIGUEZ
## (charged in Counts 1 and 2)

i.     have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.     have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.    The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section1963(a)(1) and (3), include but are not limited to at least $100,000.

4.    The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

5.    If any of the property described in paragraphs 2 and 3 above, as a result of any act or omission of a defendant –

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value;  or

(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 2 and 3 above.

All pursuant to Title 18, United States Code, Section 1963.