UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. 1:05-CR-458-1 |
| | § | |
| CONRADO CANTU | § | |
| | § | |

## <u>ORDER</u>

Pending before the Court is Mr. Cantu's Letter Motion (Dkt. No. 314), which, construed liberally, seeks to reduce his imprisonment term under 18 U.S.C. § 3582(c)(1)(A) and be placed in home confinement. (*Id.*). The Government has filed two motions asserting that it is not opposed to Mr. Cantu spending the remainder of his term of imprisonment in home confinement. (Dkt. Nos. 318, 319).

### I. BACKGROUND

In 2005, Mr. Cantu pleaded guilty to one count of racketeering in violation of 18 U.S.C. § 1962(c). (Dkt. Nos. 70, 71). He was subsequently sentenced to the mandatory minimum of 290 months imprisonment. (Dkt. Nos. 161, 162). In 2014, the Sentencing Commission promulgated Amendment 782, which lowered the base offense levels for all drugs in the Drug Quantity Table, and made the amendment retroactive. Mr. Cantu then filed a motion for reduction of sentence based on Amendment 782. (Dkt. Nos. 262, 263). After Government briefing (Dkt. No. 267) and an evidentiary hearing, the Court reduced Mr. Cantu's sentence to 210 months, the maximum reduction allowed under the amendment. (Dkt. No. 308). Later, Congress

1

passed the First Step Act, which allows defendants—as opposed to only the BOP—to bring motions for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). That change in the law precipitated Mr. Cantu's current motion before the Court. (Dkt. No. 314).

## II. LEGAL STANDARD

The First Step Act of 2018, which focuses on promoting rehabilitation and combating recidivism, amended the Elderly and Family Reunification for Certain Nonviolent Offenders Pilot Program ("Family Reunification Program") and 18 U.S.C. § 3582(c). Pub. L. No. 226-391, § 603, 132 Stat. 5194, 5238–40 (2018). Under the Family Reunification Program, the BOP has discretion to release eligible elderly offenders from Bureau facilities to home confinement. *Id.* at § 60541(g)(1)(A)–(B). An eligible elderly offender is one who meets all seven criteria determined by Congress, three of which the BOP has sole discretion to determine. *Id.* at § 60541(g)(5)(A).

In a section titled "Increasing the Use and Transparency of Compassionate Release," the First Step Act amended § 3582(c)(1)(A) to allow courts to modify sentences not only upon motion of the Director of the BOP but also upon "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 603(b), 132 Stat. at 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). A court may now modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission." *Id.* at 3582(c)(1)(A)(i).

The policy statement regarding compassionate release sets forth three specific reasons that are considered "extraordinary and compelling" as well as a catchall provision recognizing as "extraordinary and compelling" any other reason "[a]s determined by the Director of the Bureau of Prisons." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018). It also requires that "the defendant is not a danger to the safety of any other person or to the community," and that the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)." *Id.* at § 1B1.13(2) & cmt. n.4. That policy statement has not been amended since the First Step Act,[1] and some of it now clearly contradicts 18 U.S.C. 3582(c)(1)(A). *See id.* at § 1B1.13 cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."); *United States v. Overcash*, 3:15-cr-263-FDW-1, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) ("The Court agrees that § 1B1.13 now conflicts with § 3582 insofar as a defendant is now able to request a sentence reduction upon a defendant's own motion rather than having to rely on the BOP Director.").

---

[1] Not only has it not yet been amended, but "it is also unlikely that there will be a 2019 Guideline manual propagated, as the Commission currently only has two voting Commissioners and requires four voting Commissioners to vote in favor of adoption of a proposed amendment." *United States v. Handerhan*, No. 1:10-CR-298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

## III. ANALYSIS

### A. The Family Reunification Program

Even though both this Court and the Government agree that Mr. Cantu is an eligible elderly offender who should be released to home confinement under the Family Reunification Program[2]—and the Government further urges that the Court could issue an order causing the BOP to release Mr. Cantu under that program[3]—this Court does not have the authority to grant such relief. The First Step Act grants only the Attorney General, and by delegation the BOP, authority to grant release to home confinement under the Family Reunification Program. *See* 34 U.S.C. § 60541(g)(1). And it has long been settled that the Attorney General has "exclusive authority and *discretion* to designate the place of an inmate's confinement." *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D.

---

[2] Prior to the BOP's determination about Mr. Cantu's eligibility for the Family Reunification Program, the Government informed the Court that it was "not opposed to this Court granting the Defendant's motion, as he is an eligible elderly offender, who meets the criteria for placement into the [Family Reunification Program]." (Dkt. No. 318 at 3–4). After the BOP disqualified Mr. Cantu from that program for having a "history of violence," the Government submitted supplemental briefing, noting that the one incident undergirding the BOP's history-of-violence finding occurred eight years ago and was not instigated by Mr. Cantu. (Dkt. No. 319 at 2–3). According to the Government, Mr. Cantu defended himself by placing the other inmate in a headlock but never swung his fists. (*Id.* at 3). That telling is corroborated by Mr. Cantu's own testimony at a previous hearing: "The fight that I had, I had to protect myself. I had to and I and I grabbed him. It says so in the report. He was about to hit me. I told him . . . I won't let you go. You better not swing at me again." Evidentiary Hearing on August 13, 2018, at 6:00:07, Cantu v. United States (No. 1:5-cr-458-1).

Given that "the Defendant had no violent criminal history during his prior 50 years of life before incarceration, and that the Defendant served the next 14 years incarcerated with only one minor fighting incident on his BOP file, it is the Government's position that he is still an eligible elderly offender" and "does not have such a history of violence as to disqualify him from the [program]." (Dkt. No. 319 at 3).

[3] (*See* Dkt. No. 319 at 2 n.1 ("Although the Defendant was disqualified from the program due to BOP review, a Court order that the Defendant is an eligible elderly offender who qualifies for the program would cause BOP to release the Defendant under the program.")).

Tex. Apr. 3, 2019) (emphasis added) (citing *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971)); *see* 18 U.S.C. § 3621(b). Moreover, the BOP has "sole discretion" to determine if an offender has a history of violence, clearly foreclosing the courts from making an alternative finding. *See* 34 U.S.C. § 60541(g)(5)(A)(iv). The Court thus may not reject the BOP's disqualification of Mr. Cantu from the Family Reunification Program.[4]

### B. Availability of Relief Under 18 U.S.C. § 3582

Alternatively, Mr. Cantu requests relief under 18 U.S.C. § 3582. (Dkt. No. 314 at 3–4). Because the Family Reunification Program only allows a modification in the method of imprisonment and not the term of imprisonment, *see Curry*, 2019 WL 508067, at *2, the Court will construe Mr. Cantu's motion liberally to seek separate relief under § 3582.[5] So construed, Mr. Cantu asks the Court to reduce his sentence

---

[4] *See, e.g., Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019) ("[D]iscretion to release a prisoner to home confinement lies solely with the Attorney General. Accordingly, this court lacks authority to order petitioner's release." (citations omitted)); *United States v. Perez-Asencio*, Case No. 18CR3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019) ("Title 34 U.S.C. § 60541 only authorizes the Attorney General, not the courts, to modify the method of imprisonment from a BOP facility to home confinement."); *United States v. Curry*, Criminal Action No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief."); *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (discussing § 60541 and concluding that prisoners have no constitutional or statutory right to be placed in home confinement and that the BOP has the discretion to determine whether to assign a prisoner to home confinement).

[5] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citing FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.")); *see also Perez-Asencio*, 2019 WL 626175, at *1 n.2 ("[T]he Court liberally construes the Defendant's requests to be made under the relevant and legally permitted avenues for post-sentencing relief."); *Curry*, 2019 WL 508067, at *1–2 (explaining that the Court could liberally construe a request for relief under the Family Reunification Program and thus

to time-served and impose a term of supervised release equal to the unserved portion of his previous term of imprisonment, with a special condition that he remain confined to the home of his son, who is a doctor in Corpus Christi, Texas. (Dkt. No. 314 at 3–6).

Under the newly amended § 3582(c)(1)(A), Mr. Cantu has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response. (Dkt. No. 314 at 8). The Court may thus:

> reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). To determine what the Sentencing Commission considers "extraordinary and compelling," the Court turns to United States Sentencing Guidelines § 1B1.13.[6] Mr. Cantu has not presented evidence that his reasons are extraordinary and compelling under the three explicitly defined reasons. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(A)–(C) (U.S. Sentencing Comm'n 2018). The question then is whether the Court, as opposed to the Director of the BOP, can determine that "there exists in the defendant's case an extraordinary

---

"entertain a request for a modification of a term of imprisonment under [§ 3582(c)(1)(A)]").

[6] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" and grant relief on that basis. *Id.* at § 1B1.13 cmt. n.1(D).

Although Congress empowered the Commission to issue policy statements regarding the appropriate use of the sentence-modification provisions under § 3582, 28 U.S.C. § 994(a)(2)(C), Congress may override the Commission's policy statements by statute.[7]  Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute, 28 U.S.C. § 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority, as they no longer explain an appropriate use under the amended statute.  For example, at least one provision of the Commission's previously promulgated policy statement is clearly contradicted by the First Step Act's amendments to § 3582:  The unamended policy statement still advises that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons."  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.4 (U.S. SENTENCING COMM'N 2018).  Yet § 3582 allows the Court to grant a motion for extraordinary and compelling reasons upon a motion by

---

[7] *See United States v. Colon*, 707 F.3d 1255, 1261 (11th Cir. 2013) ("Congress can override any guideline or policy statement by statute." (citations omitted)); *United States v. Berberena*, 694 F.3d 514, 524–25 (3d Cir. 2012) ("Congress can . . . pass a law overruling the Commission's [policy] determination 'at any time.'" (quoting *United States v. Horn*, 679 F.3d 397, 405–06 (6th Cir. 2012) (quoting *Mistretta v. United States*, 488 U.S. 361, 394 (1989)))); *United States v. Anderson*, 686 F.3d 585, 591 (8th Cir. 2012) ("Congress . . . can modify or override the Commission's policy statements." (citation omitted)); *United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011). ("Congress of course can override both Guidelines and policy statements by statute.").

the Director of the Bureau of Prisons or by the defendant. 18 U.S.C. § 3582(c)(1)(A). The mandate that the Director of the BOP determine additional extraordinary or compelling reasons likewise fails to explain an "appropriate use" under the newly amended § 3582.

Where two statutes are in conflict, it is nearly axiomatic that the latter enacted is given preference over the former. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 327 (2012) ("The rule which ha[d] obtained in the courts for determining [conflicting statutes'] relative validity [was] that the last in order of time shall be preferred to the first." (quoting *The Federalist*, No. 78, at 468 (Clinton Rossiter ed. 1961))). That principle has especially strong force here where the Commission derives its power to promulgate the policy statement from Congress. Statutory construction, however, is a "holistic endeavor" that must consider the entire statutory scheme. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The Court "must read [statutory] words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). The Court's role is "to make sense rather than nonsense out of the *corpus juris*." *W. Va. Univ. Hosps. v. Casey*, 499 U.S. 83, 101 (1991). The corpus juris here consists of the statute (18 U.S.C. § 3582(c)), the relevant policy statement (U.S.S.G. § 1B1.13), and the statute granting the Commission authority to promulgate that policy statement (28 U.S.C. § 994).

Before the First Step Act's amendments to § 3582, it made sense that the BOP

8

would have to determine any extraordinary and compelling reasons—only the BOP could bring a motion for a reduction of sentence under § 3582(c)(1)(A). But defendants no longer need the blessing of the BOP to bring such motions. The BOP in fact may never weigh in or provide guidance when a § 3582(c) motion is brought by a defendant. *Cf. DeLuca v. Lariva*, 586 F. App'x 239, 241 (7th Cir. 2014) ("[W]hile the BOP's interpretive Program Statement lists some factors the Bureau *may* consider in determining whether to move for compassionate release, that list is non-exhaustive."). Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582.

The title of the First Step Act section that amends 18 U.S.C. § 3582(c)(1)(A) lends further weight to that conclusion. Titles are useful "when they shed light on some ambiguous word or phrase," SCALIA & GARNER, *supra,* at 221 (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528–29 (1947)), because in modern practice "the title is adopted by the legislature," *id.* (quoting James DeWitt Andrews, "Statutory Construction," in 14 *American Law and Procedure* 1, 21–22 (James Parker Hall & James DeWitt Andrews eds., rev. ed. 1948)). The title of the section of the First Step Act of 2018 that amends 18 U.S.C. § 3582 is "Increasing the Use and Transparency of Compassionate Release." First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018). That title

supports the reading that U.S.S.G § 1B1.13 cmt. n.1(D) is not applicable when a defendant requests relief under § 3582(c)(1)(A) as amended because it no longer explains an appropriate use of that statute. For if the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own § 3582(c)(1)(A) motions for reduction of sentence would be to no avail. Such a reading would contravene the explicit purpose of the new amendments.

Granted one could come up with some policy arguments for leaving U.S.S.G § 1B1.13 cmt. n.1(D) as is. For instance, Congress may have wanted the Director of the BOP to publish additional guidance and maintain control over what additional factors would constitute extraordinary and compelling. The statutory structure and history, however, belie such a reading. And "[e]ven if the reader does not consider the issue to be as clear as I do, he must at least acknowledge, I think, that it is eminently debatable—and that is enough, under the rule of lenity, to require finding for the petitioner here." *Smith v. United States*, 508 U.S. 223, 246 (1993) (Scalia, J., dissenting); *see Smith v. United States*, 508 U.S. 223, 239 (1993) ("[T]hat venerable rule [of lenity] is reserved for cases where, after seizing every thing [sic] from which aid can be derived, the Court is left with an ambiguous statute." (cleaned up)); *Moskal v. United States*, 498 U.S. 103, 108 (1990) (holding that the rule of lenity applies when "a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure . . . and motivating policies of the statute." (cleaned up)).

Applying the rule of lenity, U.S.S.G. § 1B1.13 cmt. n.1(D) no longer describes

O

an appropriate use of sentence-modification provisions and is thus not part of the applicable policy statement binding the Court. The rule of lenity mandates that when two rational readings of a statute are possible, the one that treats the defendant less harshly prevails,[8] *see McNally v. United States*, 483 U.S. 350, 359–60 (1987), because when statutes are unclear, "the consequences should be visited on the party more able to avoid and correct the effects of shoddy legislative drafting," SCALIA & GARNER, *supra*, at 299. That principle matters because the less the courts insist on precision in statutes relating to punishments, "the less the legislature will take the trouble to provide it." *Id.* at 301. Thus, the correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements "at any time," *Mistretta v. United States*, 488 U.S. 361, 394 (1989)—is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.

The Court next turns to whether the defendant in this case has presented such extraordinary and compelling reasons to warrant a reduction under 18 U.S.C. 3582(c)(1)(A)(i).

### C. Extraordinary and Compelling Reasons

Very little guidance exists on what constitutes extraordinary and compelling

---

[8] The same analysis applies to the Sentencing Guidelines. *See United States v. Bustillos-Pena*, 612 F.3d 863, 868–69 (5th Cir. 2010).

reasons warranting a sentence reduction under U.S.S.G § 1B1.13 cmt. n.1(D)—only the BOP was previously empowered to seek such relief, and it rarely did so, *United States v. Gutierrez*, No. CR 05—0217 RB, 2019 WL 1472320, at \*1 (D.N.M. Apr. 3, 2019) (citations omitted). The statute "does [not] define—or place any limits on— what 'extraordinary and compelling reasons' might warrant such a reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011). Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," *Extraordinary*, BLACK'S LAW DICTIONARY (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]," *see Compelling Need*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Here, Mr. Cantu has shown extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). Because of the First Step Act of 2018, the Government does not oppose him spending the rest of his term of imprisonment in home confinement. For the Government to advocate that the Court issue an order that "would cause BOP to release the Defendant," (Dkt. No. 319 at 2 n.1), is beyond what is usual, customary, regular, or common. And given the Government's position, irreparable harm and injustice would result if the Court failed to craft such an order.

The Court's determination in this case is narrow and unlikely to have far-reaching implications, as Government non-opposition is both the touchstone of the

determination and rare.[9]  In the only post-First Step Act case this Court found that considered extraordinary and compelling reasons outside of U.S.S.G. § 1B1.13 cmt. n.1(A)–(C), the court denied relief because ruling otherwise would mean that "*any* inmate who has young children and a spouse who must work" would deserve a reduction in sentence. *See United States v. Shields*, Case No. 12-cr-410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019).  No such concern is present here.

The Court thus finds that there are extraordinary and compelling reasons present in Mr. Cantu's case warranting a reduction in sentence under § 3582(c)(1)(A). It must now determine whether Mr. Cantu is a danger to the safety of others and weigh the factors set forth in 18 U.S.C. § 3553(a).  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(2) & cmt. n.4.

## D. Safety of Others

Compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *Id.* at § 1B1.13(2).  That statute provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of

---

[9] The Court notes that the Government claimed Mr. Cantu was not bringing his motion under § 3582(c), (Dkt. Nos. 318 at 1; 319 at 1), but told the Court that it could nevertheless order Defendant's release because he "is an eligible elderly offender who qualifies for the [Family Reunification Program]," (Dkt. No. 319 at 2 n.1).  The Court disagrees.  It can liberally construe Mr. Cantu's motion as one under 3582(c) and grant the relief requested by both parties under that provision.

section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

**(2)** the weight of the evidence against the person;

**(3)** the history and characteristics of the person, including—

>**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Cantu's offense was not a violent one. (Dkt. No. 1). He has "no violent criminal history during his prior 50 years of life before incarceration, and [he] served the next 14 years incarcerated with only one minor fighting incident on his BOP file." (Dkt. No. 319 at 3). Moreover, Mr. Cantu has "a loving and caring family," and the conditions of supervised release will require him to stay in the home of his son, a doctor in Corpus Christi, Texas.[10] (Dkt. No. 314 at 5). Nothing in the record indicates

---

[10] The following exchange occurred between an attorney and Mr. Cantu's son at an earlier evidentiary hearing:

> Attorney: So [Mr. Cantu] would have a support group...
> Son: Absolutely.
> Attorney: ...when he leaves...
> Son: Absolutely.
> Attorney: ...prison?
> Son: Absolutely.
> Attorney: whenever that is?
> Son: One-hundred-percent.

Evidentiary Hearing on August 13, 2018, at 5:45, Cantu v. United States (No. 1:5-cr-458-1).

that Mr. Cantu poses any threat to the community. Thus, pursuant to § 3142(g), the Court finds that Mr. Cantu does not pose a danger to any other person or the community.

### E. Weighing § 3553(a) Factors

The applicable § 3553(a) factors likewise support Mr. Cantu's request for compassionate release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> **(3)** the kinds of sentences available;
>> **(4)** the kinds of sentence[s] and the sentencing range established for—
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . [;]
>> **(5)** any pertinent policy statement . . . [;]
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court agrees that Mr. Cantu's offense was very serious. But he has been in custody since December 2005—over 14 years. (Dkt. Nos. 318 at 3, 319 at 3). And if afforded the relief he requests, the remainder of his sentence will still be served,

just on supervised release and in home confinement. That sanction adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public. Because such a reduction would shorten Mr. Cantu's sentence by less than a year,[11] there is no fear of sentence disparities. The Court therefore concludes that the applicable § 3553(a) factors support Mr. Cantu's request for compassionate release.

## IV. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Cantu's sentence, that Mr. Cantu does not pose a danger to any other person or the community, that the § 3553(a) factors support a reduction, and that the reduction is consistent with currently applicable Sentencing Commission policy statements. The Court therefore **GRANTS** Mr. Cantu's Letter Motion (Dkt. No. 314), **ORDERS** that Mr. Cantu's sentence of imprisonment be reduced to **time-served**, and further **ORDERS** the BOP to release Mr. Cantu for placement at his son's residence in the Corpus Christi, Texas area, where he will remain in home confinement for what would have otherwise been the remainder of his term of imprisonment, subject to all standard and mandatory terms of supervised release as originally imposed. Mr. Cantu will then serve the remainder of his supervised-release term, as previously imposed (Dkt. No. 161 at 3–4), without the home-confinement condition.

---

[11] Mr. Cantu's release date is April 1, 2020. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (search by inmate number) (last visited June 6, 2019).

It is so **ORDERED**.

**SIGNED** June 17, 2019.

_____
Marina Garcia Marmolejo
United States District Judge